## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

BAYFRONT HEALTH – ST. PETERSBURG
701 SIXTH STREET SOUTH
ST. PETERSBURG, FL  33701      )
      )
      )
      Plaintiff,      )
      )    Case No. _____
      v.      )
      )
XAVIER BECERRA, Secretary, United      )
States Department of Health      )
and Human Services      )
200 Independence Avenue, S.W.      )
Washington, D.C. 20201      )
      )
      Defendant.      )
_____)

## PLAINTIFF'S ORIGINAL COMPLAINT

Bayfront Health – St. Petersburg (the <u>Hospital</u>) brings this action against defendant Xavier Becerra, in his official capacity as the Secretary (the <u>Secretary</u>) of the Department of Health and Human Services (<u>HHS</u>).  Based on direction from a federal agency and consistent with caselaw, a contractor was obligated to calculate certain reimbursement to the Hospital in a specified way.  Yet the contractor refused to do so, despite having the relevant information, and a final agency decision wrongly permitted this non-compliance.  This arbitrary and capricious decision must be set aside, and the Hospital must be appropriately reimbursed.

4891-0448-3313.2

## **INTRODUCTION**

1.      This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* (the Medicare Act), the Administrative Procedure Act, 5 U.S.C. §§ 706 *et seq.* (the APA), and other authorities.  The Medicare payment issue in this action is how inpatient hospital days should be counted for purposes of calculating the Hospital's Medicare disproportionate share hospital (DSH) payments for the fiscal year (FY) ending on September 30, 2015.

2.      This is a civil action brought to obtain judicial review of a final decision on this issue rendered on August 21, 2024, by the Provider Reimbursement Review Board (PRRB or Board) (attached as Exhibit A).  The Hospital received the decision for which judicial review is sought in PRRB Case No. 19-2364.

## **JURISDICTION AND VENUE**

3.      This Court has jurisdiction under 42 U.S.C. §1395oo(f) (appeal of final Medicare program agency decision) and 28 U.S.C. §1331 (federal question).

4.      Venue lies in this judicial district pursuant to 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1391(e)(1).

## PARTIES

5.   The Hospital, located in St. Petersburg, Florida, is Bayfront Health – St. Petersburg (Medicare Provider No. 10-0032).   At all relevant times, the Hospital had a Medicare provider agreement and was eligible to participate in the Medicare program.

6.   Defendant, Xavier Becerra, Secretary of HHS, 200 Independence Avenue, S.W., Washington D.C. 20201, is the federal officer responsible for the administration of the Medicare program.   Defendant Becerra is sued in his official capacity.

## GENERAL BACKGROUND OF THE MEDICARE PROGRAM

7.   The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease.   42 U.S.C. § 1395c.   The Medicare program is federally funded and administered by the Secretary through the Centers for Medicare & Medicaid Services (CMS) (formerly the Health Care Financing Administration (HCFA)) and its contractors.   42 U.S.C. § 1395kk(a); 42 Fed. Reg. 13,262 (Mar. 9, 1977).

8.   CMS implements the Medicare program, in part, through rulemaking.   *See* 42 C.F.R. § 401.108.   In addition to the substantive rules published by the Secretary in the Code of Federal Regulations and the Rulings, CMS publishes other interpretative rules implementing the Medicare program, which are compiled in CMS manuals.   The Secretary also issues other

subregulatory documents relating to the Medicare program, which generally do not have the force and effect of law.

9. The Medicare program has five parts: A, B, C, D, and E. Part A of the Medicare program provides for coverage and payment for, among others, inpatient hospital services on a fee-for-service basis. 42 U.S.C. §§ 1395c to 1395i-6. Part A services are furnished to Medicare beneficiaries by "providers" of services, including hospitals, that have entered into written provider agreements with the Secretary, pursuant to 42 U.S.C. § 1395cc, to furnish hospital services to Medicare beneficiaries. This action involves only Part A of the Medicare program.

10. CMS pays providers participating in Part A of the Medicare program for covered services rendered to Medicare beneficiaries through Medicare Administrative Contractors (MACs). *See* 42 U.S.C. § 1395kk-1(a). Each Medicare-participating hospital is assigned to a MAC. 42 U.S.C. § 1395kk-1(a)(3)(B). The amount of the Medicare Part A payment to a hospital for services furnished to Medicare beneficiaries is determined by its MAC based on instructions from CMS. *See* 42 C.F.R. § 405.1803.

## THE MEDICARE HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEM

11. Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted the Hospital Inpatient Prospective Payment System

(IPPS) to reimburse hospitals, including the Hospital, for inpatient hospital operating costs. *See* 42 U.S.C. § 1395ww(d). Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by the hospitals. Rather, they are based on predetermined, nationally applicable rates based on the diagnosis of the patient determined at the time of discharge from the inpatient stay, subject to certain payment adjustments. *See id.* One of these adjustments is the Medicare "disproportionate share hospital" or "DSH" payment. *See* 42 U.S.C. § 1395ww(d)(5)(F).

## THE MEDICARE DSH ADJUSTMENT

12. Hospitals that treat a disproportionately large number of low-income patients are entitled by statute to a DSH adjustment, in addition to standard Medicare payments. 42 U.S.C. § 1395ww(d)(5)(F).

13. The DSH program was enacted by Congress in the Consolidated Omnibus Budget Reconciliation Act of 1985 and took effect beginning with discharges on or after May 1, 1986. Pub. L. No. 99-272, § 9105, 100 Stat. 158-60 (Apr. 7, 1986).

14. Congress enacted the DSH adjustment in recognition of the relatively higher costs associated with providing services to low-income patients. These higher costs have been found to result from the generally poorer health of these patients. The DSH adjustment provides additional

Medicare reimbursement to hospitals for the increased cost of providing services to their low-income patients.

15.     There are two methods of determining qualification for a DSH adjustment: the more common "proxy method" (42 U.S.C. § 1395ww(d)(5)(F)(i)(I)) and the less common "Pickle method" (42 U.S.C. § 1395ww(d)(5)(F)(i)(II)).  The Hospital's DSH calculations at issue were made using the proxy method, under which entitlement to a DSH adjustment, as well as the amount of the DSH payment, is based on the hospital's "disproportionate patient percentage" or "DPP."  42 U.S.C. § 1395ww(d)(5)(F)(v) and (vi).

16.     The DPP is the sum of two fractions, which are designed to capture the number of low-income patients a hospital serves on an inpatient basis by counting the number of days that low-income patients receive inpatient services in a given fiscal year ("inpatient days").  42 U.S.C. § 1395ww(d)(5)(F)(vi).  Thus, the two fractions serve as a "proxy" to determine low-income patients, rather than having CMS count the actual number of those patients.

17.     The first fraction, referred to as the "Medicare Fraction," accounts for inpatients who are current Medicare Part A recipients and also entitled to Supplemental Security Income (SSI) benefits, a federal low-income supplement.  The Medicare Fraction is defined by statute as follows:

6

> [T]he fraction (expressed as a percentage), the numerator of which
> is the number of such hospital's patient days for such period which
> were made up of patients who (for such days) were entitled to
> benefits under part A of this subchapter and were entitled to
> supplementary security income benefits (excluding any State
> supplementation) under subchapter XVI of this chapter, and the
> denominator of which is the number of such hospital's patient days
> for such fiscal year which were made up of patients who (for such
> days) were entitled to benefits under Part A of this subchapter[.]

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).  The Medicare Fraction, therefore, is the percentage of a hospital's Medicare Part A-entitled inpatients who were also entitled to SSI benefits at the time that they were receiving inpatient services at the hospital.

18.  The second fraction, referred to as the "Medicaid Fraction," is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which
> is the number of the hospital's patient days for such period which
> consist of patients who (for such days) were eligible for medical
> assistance under a State plan approved under title XIX, but who
> were not entitled to benefits under part A of this subchapter, and
> the denominator of which is the total number of the hospital's
> patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

19.  The Medicaid Fraction, therefore, is intended to account for hospital inpatients "who were not entitled to benefits under [Medicare] [P]art A," but who were "eligible for medical assistance" under the Medicaid State plan at the time that they were receiving inpatient services at the hospital. The Medicaid Fraction is at issue in this case.

20.    The statute further provides that, for purposes of determining the Medicaid Fraction, "the Secretary may, to the extent and for the period the Secretary determines appropriate, include patient days of patients not so eligible but who are regarded as such because they receive benefits under a demonstration project approved under subchapter XI." 42 U.S.C. §1395ww(d)(5)(F)(vi)(II).   Patient days of patients who receive benefits under a demonstration project approved under subchapter XI of the Social Security Act are commonly referred to as "section 1115 waiver days" (because of the Secretary's waiver or demonstration project authority under section 1115 of the Social Security Act).   The Secretary's non-inclusion of section 1115 waiver days in the Hospital's Medicaid Fraction for its cost year ending 9/30/2015 is at the heart of this action.

## LITIGATION OVER SECTION 1115 WAIVER DAYS AND THE SECRETARY'S ACQUIESCENCE IN FIFTH CIRCUIT AND D.C. CIRCUIT DECISIONS

21.    In *HealthAlliance Hospitals v. Azar*, 346 F. Supp. 3d 43 (D.D.C. 2018), the Secretary argued that, for hospital days of a patient covered under a section 1115 waiver to be included in the Medicaid Fraction, the terms of waiver agreement between the State Medicaid agency and the Secretary must contain an explicit statement that patients covered by the waiver are "eligible for inpatient hospital services." *See id.* at 46.  The court disagreed.  *Id.* at 46-47 According to the court, "[i]t is clear from the plain language of the

regulation's text [at 42 C.F.R. § 412.106(b)(4)(i)] that patients who are eligible to receive comprehensive medical care through an insurance program authorized under a section 1115 waiver (as evidenced by their eligibility for inpatient hospital services) are to be included in the Medicare reimbursement formula, and whether or not the waiver agreement through which the Secretary authorized the program *says* anything about their eligibility for inpatient hospital services is irrelevant to the calculation of a hospital's disproportionate share hospital adjustment." *Id.* at 47.

22.     A similar issue in *HealthAlliance* was then presented in *Forrest General Hospital*, 926 F.3d 221 (5th Cir. 2019). The Secretary argued that an uncompensated care pool related to Hurricane Katrina was not part of a section 1115 waiver. *Id.* at 232. In determining that the uncompensated care pool, eligible for inpatient services, was in fact covered under a section 1115 waiver and thus those patient days must be part of the Medicaid Fraction, the Fifth Circuit found "[then-] Judge Ketanji Brown Jackson's excellent opinion in *HealthAlliance Hospitals, Inc. v. Azar* extremely persuasive. That opinion clearly and convincingly explains why the law governing the inclusion of § 1115 waiver patient days in the Medicaid fraction is straightforward: The plain regulatory text demands that such days be included—period." *Id.* at 234 (citations omitted). The Fifth Circuit also held that the statute was unambiguous and noted with respect to 42 C.F.R. § 412.106(b)(4) that "[w]hat

does *not* matter for purposes of this regulation is what the plan documents say about eligibility for particular services." *Id.* at 228-29 (emphasis added).

23.     Following *Forrest General*, the Secretary continued to litigate, and lose, the issue of whether days associated with patients who were covered under a section 1115 waiver that included an uncompensated care pool, and which did not specifically mention inpatient hospital benefits, should be included in the Medicaid Fraction. *See Bethesda Health, Inc. v. Azar*, 980 F.3d 121, 122 (D.C. Cir. 2020), *aff'g, Bethesda Health, Inc. v. Azar*, 389 F. Supp. 3d 32 (2019).

24.     As a result of the above adverse court decisions, CMS issued manual instructions acquiescing to the Fifth Circuit and D.C. Circuit decisions. *See* CMS Manual Instructions System, Change Request (CR) 12669, Transmittal No. 11912 (March 16, 2023) (attached as **Exhibit B**).  The manual instructions provide that upon a hospital submitting a listing of its section 1115 waiver days, the hospital's MAC must do the following:

> For cost reports that are open via a Provider Reimbursement Review Board (PRRB) appeal that has not yet been heard before the PRRB, Section 1115 days will be reviewed through the normal Administrative Resolution process within 24 months of the CR implementation date.  In order for the Medicare Administrative Contractor (MAC) to consider the providers' Section 1115 days in recalculation of the Medicaid fraction, the following review shall take place, only as deemed necessary by the Uniform Desk Review process or Administrative Resolution process:
>     [a.] For providers with patients whose inpatient stay is covered by a Section 1115 waiver program funding pool, which

pays health care providers that provide uncompensated care to patients who are uninsured or underinsured and is matched by Title XIX federal funds, the MAC shall review the State's Section 1115 program documents to determine the method by which the provider identifies eligible inpatient stay days.

[b.] The MAC shall select a sample of accounts from the provider's submitted Section 1115 log for further review.

[c.] The MAC shall request documentation from the provider for the selected sample and review the documentation to ensure that: a) the provider has accurately included the inpatient stay in the Section 1115 waiver program for reimbursement through the funding pool based on the provider's Section 1115 approved program documents; and b) has accurately included the inpatient stay on the Section 1115 log.

[d.] The MAC shall review the provider's applicable documentation that details the patien"s length of stay and the acute-care unit that the patient's stay occurred to verify the patient's length of stay in an inpatient acute section of the hospital.

*Id.*

25.    In the FY 2024 IPPS rulemaking, the Secretary proposed and finalized new and restrictive regulations on including section 1115 waiver days in the Medicaid Fraction; however, these regulations are prospective only. *See* 88 Fed. Reg. 58640 59017 (Aug. 28, 2023) ("Finally, we are finalizing as proposed that our revised regulation would be effective for discharges occurring on or after October 1, 2023").

26.    Despite receiving a listing of the Hospital's section 1115 waiver days, the MAC has refused to include the Hospital's section 1115 waiver days in its Medicaid Fraction for the cost year at issue in this case (cost year ending 9/30/2015).

## THE RELEVANT MEDICARE APPEALS PROCESS

27.     By statute, the Board has the "power and authority to make rules and establish procedures, not inconsistent with the provisions of this subchapter [Subchapter XVIII of Chapter 7 of Title 42 of the U.S.C.] or regulations of the Secretary, which are necessary or appropriate to carry out the provisions of this section [1395oo]." 42 U.S.C. § 1395oo(e).

28.     By resulting regulation, at the close of its fiscal year, a provider must submit a cost report to the MAC showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. § 413.20. Under the Medicare program, each hospital's MAC is required to analyze and audit the hospital's annually submitted Medicare cost report and issue a Medicare Notice of Amount of Program Reimbursement (NPR), which informs the hospital of the final determination of its total Medicare reimbursement for the hospital's fiscal year. 42 C.F.R. § 405.1803. The statute requires only that the provider be "dissatisfied with a final determination of the [Medicare Administrative Contractor (MAC)] as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this title." 42 U.S.C. § 1395oo(a)(1)(A)(i).

29.     If a hospital is dissatisfied with its MAC's final determination (or any revised final determination) of the hospital's total Medicare program

reimbursement for a fiscal year, as reflected in the NPR, and the hospital satisfies the amount in controversy requirements, the hospital has a right to obtain a hearing before the Board by filing an appeal within 180 days of receiving its NPR (or any revised NPR).  42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835(a).  In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, the Board decides questions relating to its jurisdiction and procedure.  *See* 42 U.S.C. § 1395oo.  Further, the Board is required to "affirm, modify, or reverse . . . ***and*** to make any other revisions on matters covered by such cost report[.]" *See* 42 U.S.C. § 1395oo(d) (emphasis added).  That is, the Board cannot avoid making necessary revisions on matters properly before it.

30.    The decision of the Board on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the Board's decision.  42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875, 405.1877.  The Secretary has delegated authority under the statute to review Board decisions to the CMS Administrator.  *See* 42 C.F.R. §§ 405.1875, 405.1877.  Thus, the Secretary's final administrative decision for purposes of judicial review is either the decision of the Board or the decision of the CMS Administrator after review of the Board's decision.  *See* 42 C.F.R. § 405.1877(a)(2).

31.     A hospital may obtain judicial review by filing suit within 60 days of receipt of the Secretary's final administrative decision in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia.   42 U.S.C. § 1395oo(f)(1).  The Secretary is the proper defendant in such an action.  *See* 42 C.F.R. § 405.1877(a)(2).   Under 42 U.S.C. § 1395oo(f)(2), interest is to be awarded in favor of the prevailing party in an action brought under 42 U.S.C. § 1395oo(f).  Under 42 U.S.C. § 1395g(d), CMS is required to pay interest on underpayments to Medicare providers, if the underpayment is not paid within thirty days of a "final determination."

32.     Jurisdiction is also available under 28 U.S.C. § 1331 where the agency renders a final determination and there is no administrative appeal available for that determination.  *Am. Chiropractic Ass'n v. Leavitt*, 431 F.3d 812, 816 (D.C. Cir. 2005).

## APPLICABILITY OF THE APA TO MEDICARE APPEALS

33.     Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA.  Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"

14

5 U.S.C. § 706(2)(A).  Further, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute[.]"  5 U.S.C. § 706(2)(E).

## SPECIFIC FACTS PERTAINING TO THIS CASE

*Dismissal of Section 1115 Waiver Days "Issue"*

34.   On February 13, 2019, the MAC issued an NPR for the Hospital's cost year ending September 30, 2015.  On August 6, 2019, the Board received the Provider's individual appeal request appealing its DSH adjustment.  The Provider timely appealed the non-inclusion of Medicaid eligible days, saying "[t]he MAC, contrary to the regulation, failed to include all Medicaid eligible days, ***including but not limited to*** Medicaid paid days, unpaid eligible days, eligible days adjudicated and processed after the cutoff date and all out of state eligible days in the Medicaid Percentage of the Medicare DSH calculation." Ex. A at 4-5 (emphasis added).  The italicized language above demonstrates that the Provider appealed ***all*** Medicaid eligible days, including section 1115 waiver days.  By definition, section 1115 waiver days are Medicaid eligible days.  *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II); 42 C.F.R. § 412.106(b)(4)(i)-(ii).

35.   On August 21, 2024, the Board dismissed the Provider's appeal of what it termed the "section 1115 Waiver days issue." Ex. A at 14.  The ground for dismissal was that "Because the Provider did not raise the Section 1115

Waiver Days prior to the deadline to add issues, and it is a distinct issue, the Board finds that the issue was not properly or timely appealed and dismisses it from the appeal. The DSH Medicaid Eligible Days issue as stated in the original appeal request cannot be construed to include section 1115 Waiver days. Additionally, there is no indication that any 1115 waiver days were included with the as-filed cost report which, if true, would make them an unclaimed cost and provide an independent basis for dismissal." Ex. A at 16. But there is no such thing as a "section 1115 Waiver days issue." The "issue" properly before the Board was the inclusion of all Medicaid eligible days for purposes of calculating DSH reimbursement.

36.    The regulations at 42 C.F.R. § 405.1835 contain requirements for appealing an "issue" and a time limit on adding an "issue" – not on "sub-issues" or "components" of an issue. Both a June 25, 2004 proposed rule (69 Fed. Reg. 35716) and a May 23, 2008 final rule (73 Fed. Reg. 30190) support that an "issue" is encapsulated by a specific cost report adjustment. They do not slice and dice an "issue" into component parts, including the specific reason why Medicaid eligible days were not counted in the numerator of the Medicaid Fraction of the Disproportionate Payment Percentage.

37.    For example, the proposed rule states that:

> in order to preserve its appeal rights, a provider must either claim an item on its cost report where it is seeking reimbursement that it believes to be in accordance with

> Medicare policy, or self-disallow the item where it is seeking reimbursement that it believes may not be in accordance with Medicare policy… Note that we are using the term "item" instead of "cost" to emphasize that our proposed policy would refer to determinations of amounts due to providers subject to a prospective system as well as determinations of reimbursement due to providers that are paid under cost reimbursement principles.

69 Fed. Reg. at 35722. Similar language appears in the final rule at 73 Fed. Reg. 30194. A MAC's cost report determination is synonymous with an "adjustment." In this case, the same adjustment to so-called generic Medicaid eligible days also governs Medicaid eligible days associated with beneficiaries covered under a section 1115 waiver. To the extent that the regulations were interpreted as requiring providers to appeal sub issues or components of issues, the regulations would impermissibly restrict the PRRB's jurisdiction as set forth in the statute.

38.     Rule 8 of the August 29, 2018 version of the PRRB Rules—which provides that "each contested component must be appealed as a separate issue"—is internally inconsistent with Rule 7. Whereas Rule 8 refers to "components" of an issue, and gives section 1115 waiver days as an example, Rule 7.2.1 provides that, for purposes of identifying the "issue" under appeal, the provider needs to submit an "issue title and a concise issue statement" that describes the cost report adjustment, including the cost report adjustment number, the controlling authority, why the cost report adjustment is incorrect,

17

how the payment should be determined differently, the reimbursement effect, and the basis for jurisdiction before the PRRB.  Thus, Rule 8 is both inconsistent with the regulations and Rule 7.  Further, whereas Rule 7 directs providers to Rule 8, Rule 8 directs the providers to Rule 7.  This direction is flatly inconsistent with Rule 7, as explained above, or at least is confusing and misleading.

39.    Moreover, Rule 8 is predicated on the supposed need "[t]o comply with the regulatory requirement to specifically identify the items in dispute." Thus, Rule 8 proceeds from the misunderstanding that the regulations require that sub-issues or "components" of an issue must be identified, when in fact, and as explained above, this is not true.  For this reason, Rule 8's requirement to identify "components" of an issue is invalid.

40.    The supposed requirement that the provider go further and specify not only DSH reimbursement, and not only the Medicaid eligible days portion of such reimbursement, but also the section 1115 waiver days component of Medicaid eligible days, is not found in the statute, but only in the PRRB's rules. The PRRB has no authority to expand or constrict its jurisdiction given to it by Congress, and thus its requirement that providers must describe sub issues or components of issues simply to obtain a hearing is in conflict with the statute and invalid.

*Dismissal of Medicaid Eligible Days Issue*

18

41.     The Board dismissed the DSH Payment – Medicaid Eligible Days Issue stating that "Specifically, the Board finds that the Provider has failed to satisfy the requirements of 42 C.F.R. § 412.106(b)(4)(iii) and 405.1853(b)(2)-(3) and Board Rules 25.2.1 and 25.2.2 related to the submission of documentary evidence required to support its claims or to describe why said evidence is unavailable."  Ex A at 13.

42.     The Board's dismissal of the DSH Payment - Medicaid Eligible Days issue was due to it finding that "As the Provider failed to identify even a single Medicaid eligible day as being in dispute as part of the position paper filing (much less provider the § 412.106(b)(iii) supporting documentation), notwithstanding its obligations under 42 C.F.R. §§ 412.106(b)(4)(iii) and 405.1853(b)(2)-(3) and Board Rule 25, the Board finds that there are no such days in dispute and that the actual amount in controversy is $0."  Ex A at 13.

## Count I

**Judicial Review Under the Medicare Act and the APA**
**(The Board's Dismissal was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and** Unsupported by Substantial Evidence**)**

43.     The Hospital incorporates by reference all preceding paragraphs of this Complaint.

44.     The APA prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "unsupported by substantial evidence," *id.* § 706(2)(E).

45.     The Board's dismissal of the section 1115 waiver days component of its appeal relating to Medicaid eligible days was ultra vires, arbitrary and capricious, an abuse of discretion, and otherwise contrary to the Medicare Act.

## Count II

### Judicial Review Under the Medicare Act and the APA
### (The Board's Dismissal and Related Rules Are Not in Accordance with Law)

46.     The Hospital incorporates by reference all preceding paragraphs of this Complaint.

47.     The Board only has the authority to make rules and establish procedures that are not inconsistent with statute or the regulations of the Secretary and that are necessary or appropriate to carry out the provisions of the statutory provision authorizing the Board.

48.     Any requirement to identify components of issues is not in accordance with law.  Any such requirement is not "necessary or appropriate to carry out the provisions" of the statute authorizing the Provider Reimbursement Review Board appeals process and is inconsistent with statute and regulation.

49.     Moreover, the Board's requirement that providers had to identify components of issues arbitrarily and capriciously has denied providers including the Hospital the appeal rights to which they are entitled by statute.

## Count III

**Judicial Review Under the Medicare Act and the APA(The Board's Dismissal was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and** Unsupported by Substantial Evidence**)**

50.     The Hospital incorporates by reference all preceding paragraphs of this Complaint.

51.     The APA prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "unsupported by substantial evidence," *id.* § 706(2)(E).

52.     The Board's dismissal of the DSH Payment - Medicaid Eligible Days issue was ultra vires, arbitrary and capricious, an abuse of discretion, otherwise contrary to the Medicare Act, and unsupported by substantial evidence.

## REQUEST FOR RELIEF

For these reasons, the Hospital respectfully requests that this Court enter an order:

a.     Reversing the Board's dismissal of the section 1115 waiver days component of the Hospital's appeal of the non-inclusion of all Medicaid

eligible days in the Medicaid Fraction of its Disproportionate Patient Percentage for purposes of its DSH Adjustment.

b.   In the alternative, directing the Secretary to direct its MAC to audit the Hospital's listing of section 1115 waiver days and accept all verified days and include them in the Medicaid Fraction of the Hospital's Disproportionate Patient Percentage for purposes of its DSH Adjustment.

c.   Awarding the Hospital's costs and reasonable attorneys' fees, and for interest and such other and further relief that the Court deems appropriate.

DATED:  October 25, 2024                    Respectfully Submitted,

**FOLEY & LARDNER LLP**

By: */s/ Wesley J. Martinez*
One Independent Drive, Suite 1300
Jacksonville, FL 32202
Tel: (904) 359-2000
Facsimile: (904) 359-8700
WESLEY J. MARTINEZ
Florida Bar No. 1013924
Email: wmartinez@foley.com

*Attorneys for Plaintiff*